UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHARLIE FLOYD,

                Plaintiff,

v.

UNKNOWN SURETY et al.,

                Defendants.

_____/

Case No. 2:23-cv-49

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendant Surety for failure to state a claim. The Court will dismiss any state law claims against Defendant Surety without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Newcomb and Grondin: (1) Plaintiff's official capacity claims for damages; and (2) Plaintiff's Eighth Amendment claims. The following claims

against Defendants Newcomb and Grondin remain in the case: (1) Plaintiff's official capacity claims seeking declaratory and injunctive relief; (2) Plaintiff's First Amendment retaliation claims; and (3) Plaintiff's state law claims asserting violations of the Michigan Constitution as well as violations of Defendants Newcomb and Grondin's "surety bonds."

<u>Discussion</u>

## I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeant/Corrections Officer Unknown Grondin and Corrections Officer Sheri Newcomb. Plaintiff also sues Unknown Surety, explaining that he is joining this entity "as a defendant on the official bond of a public officer for breach of bond and the circumstances so require the court to direct the 'delivery' or assignment of the bond for prosecution." (ECF No. 1, PageID.8.) Plaintiff indicates that he is suing Defendants in their official and personal capacities. (*Id.*, PageID.2.)

Plaintiff alleges that on December 4, 2022, Defendant Newcomb was shaking down Plaintiff's cubicle when she threw Plaintiff's hat on the floor. (*Id.*, PageID.3.) Defendant Newcomb "proceeded to imitate a dog barking and instructed [Plaintiff] to go fetch his hat like the dog that he is." (*Id.*) Plaintiff contends that Defendant Newcomb did this in retaliation for a grievance Plaintiff had filed against her. (*Id.*)

Plaintiff filed a grievance about the incident. (*Id.*, PageID.4.) Plaintiff also "wrote numerous complaints" to Defendant Grondin and other staff members "about being intentionally harassed, intimidated[,] threatened, [and] subjected to mental and personal abuse and retaliation." (*Id.*) According to Plaintiff, Defendants Newcomb and Grondin both told him that he needed to sign off on his grievances and stop "complaining and filing grievances or they [would] make his

2

and the life of family members misery, hell[,] and painful." (*Id.*, PageID.4–5.) they also said they would "have something done to his family or just as easy to set [P]laintiff up and put in the hole." (*Id.*, PageID.5.)

Plaintiff alleges that Defendants Grondin and Newcomb retaliated against him for filing grievances by "performing intentional harassing searches of his cell, confiscating his legal work, food, [and hygiene,] and directing other staff to act in concert with them and conduct searches of his cell and tear everything up leaving his cell in disarray." (*Id.*) On February 14, 2023, Defendants Grondin and Newcomb told Plaintiff that if he did not stop filing grievances, they would "have his cell shook down and have his ass put in the hole because they [were] tired of his s***." (*Id.*)

Plaintiff's exhibits indicate that on February 14, 2023, Defendant Newcomb issued Plaintiff a Class I misconduct for possession of dangerous contraband. (ECF No. 1-1, PageID.21.) Defendant Newcomb stated that while conducting a pat search, she found a section of an emery board in Plaintiff's shirt pocket. (*Id.*) Defendant Grondin reviewed Plaintiff on the misconduct. (*Id.*) She told Plaintiff that she could throw the ticket out because the emery board was not dangerous contraband, but that she would do so only if Plaintiff agreed "not to complain or grieve her or her staff anymore." (ECF No. 1, PageID.5.) Otherwise, Defendant Grondin stated, Plaintiff would be placed in segregation and "he [could] take his chances at his hearing." (*Id.*) Plaintiff did not agree to Defendant Grondin's terms, and she placed Plaintiff in segregation until he was found not guilty at a misconduct hearing. (*Id.*)

Plaintiff contends that he "continues to be subjected to excessive cell searches, daily by [Defendants] or their agents, . . . for the purposes of harassment, intimidation[,] and retaliation." (*Id.*, PageID.7.) Based on the foregoing, Plaintiff asserts First Amendment retaliation claims, as well as Eighth Amendment claims, against Defendants Newcomb and Grondin. He also asserts

violations of the Michigan Constitution. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.9–10.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Section 1983 Claims

#### 1.     Defendant Surety

Plaintiff indicates that he is naming Unknown Surety "as a defendant on the official bond a public officer for breach of bond and the circumstances so require the court to direct the 'delivery' or assignment of the bond for prosecution." (ECF No. 1, PageID.8.) He alleges that Defendants Newcomb and Grondin were "surety upon the 'official bond' of Heidi Washington, as MDOC Director." (*Id.*, PageID.9.) Presumably, Plaintiff believes that Defendants Newcomb and Grondin, as well as all MDOC officers, have performance bonds and seeks to sue the surety on the bond.

As an initial matter, nothing in Plaintiff's complaint leads the Court to conclude that Unknown Surety or a surety bond is a person who can be sued under § 1983. Moreover, the Court recognizes that 28 U.S.C. § 1352 provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States." *See* 28 U.S.C. § 1352. Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that "Defendants' performance bonds—if they exist at all—were executed under 'any law of the United States.'" *See Moore v. Whitmer*, No. 1:21-cv-117, 2021 WL 5194807, at *4 (W.D. Mich. Nov. 9, 2021), *aff'd*, 2022 WL 18862075 (6th Cir. Aug. 12, 2022). Any federal claims against Defendant Surety will, therefore, be dismissed.

Plaintiff also references MDOC Director Heidi Washington in connection with Defendant Surety. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S.

at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that MDOC Director Washington engaged in any active unconstitutional behavior. Accordingly, any purported claims against Director Washington will be dismissed.

### 2. Defendants Newcomb and Grondin

#### a. Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits

in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff suggests that Defendants Newcomb and Grondin continue to subject him to excessive cell searches to retaliate against Plaintiff for his grievances. (ECF No. 1, PageID.7.) He also seeks injunctive relief in the form of

an order directing Defendants Newcomb and Grondin to stop writing fabricated misconducts and stop conducting searches of Plaintiff's cell. (*Id.*, PageID.9–10.) Plaintiff, therefore, has sufficiently alleged that Defendants Newcomb and Grondin are engaged in ongoing violations of federal law, and he seeks relief that could be properly characterized as prospective. Plaintiff's official capacity claims for declaratory and injunctive relief against Defendants Newcomb and Grondin, therefore, may not be dismissed upon initial review.

### b. Individual Capacity Claims

### (1) First Amendment

Plaintiff contends that Defendants Newcomb and Grondin violated his First Amendment rights by retaliating against Plaintiff for writing grievances. Specifically, Plaintiff alleges that Defendants Newcomb and Grondin told him that he needed to sign off on his grievances and stop filing new ones or they would make "his and the life of his family members misery, hell[,] and painful." (ECF No. 1, PageID.5.) Plaintiff also alleges that Defendants Newcomb and Grondin have engaged in excessive cell searches, "confiscating [Plaintiff's legal work, food, [and hygiene products] and directing other staff to act in concert with them and conduct searches of [Plaintiff's] cell and tear everything up leaving [Plaintiff's] cell in disarray." (*Id.*) Defendants Newcomb and Grondin also threatened to put Plaintiff in segregation. (*Id.*) Finally, Defendant Newcomb issued Plaintiff a false misconduct, and Defendant Grondin refused to dismiss the ticket upon review because Plaintiff refused to agree to not submit grievances anymore. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct by filing grievances. *See id.*; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, the actions noted above rise to the level of adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (noting that "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation"); *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (concluding that a cell search can be sufficiently adverse where the cell is left in disarray and results in the confiscation or destruction of materials). Finally, Plaintiff has alleged facts suggesting that Defendants Newcomb and Grondin explicitly stated that they were taking these actions because of Plaintiff's grievance activity. Therefore, taking these allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss Plaintiff's retaliation claims against Defendants Newcomb and Grondin on initial review.

### (2)    Eighth Amendment

Plaintiff also contends that Defendants Newcomb and Grondin violated his Eighth Amendment rights by subjecting him to psychological harm. (ECF No. 1, PageID.6.) Plaintiff alleges that Defendants Newcomb and Grondin's actions have caused him "deep seated anxiety and severe depression, headaches, insomnia, unrest[,] and mental distress." (*Id.*, PageID.7.) Plaintiff suggests that the excessive cell searches and his temporary placement in segregation

violated the Eighth Amendment as well. (*Id.*) Plaintiff further alleges that Defendants Newcomb and Grondin have engaged in verbal harassment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants Newcomb and Grondin violated his Eighth Amendment rights. First, while unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment asserted by Plaintiff.

Plaintiff also suggests that his temporary placement in segregation violated the Eighth Amendment. Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*

*v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, the filing of an allegedly false misconduct, which led to Plaintiff's placement in segregation, does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Plaintiff, therefore, cannot maintain an Eighth Amendment claim premised upon his receipt of a false misconduct and temporary placement in segregation.

Finally, even if Plaintiff's allegation that Defendants Newcomb and Grondin have engaged in excessive cell searches that leave his cell in disarray and result in the confiscation of property is true, such conduct does not rise to the level of cruel and unusual punishment that violates the Eighth Amendment. *See, e.g.*, *Roper v. Johnson*, No. 2:19-cv-2061, 2020 WL 224601, *2-3 (N.D. Ohio Jan. 15, 2020) (dismissing prisoner's claim that search of his cell and destruction of his property constituted cruel and unusual punishment); *Williams v. Washington*, No. 2:18-cv-144, 2018 WL 6190497, *12 (W.D. Mich. Nov. 28, 2018) (concluding that frequent cell searches and pat downs did not rise to the level of an Eighth Amendment violation). "Frequent cell searches alone, while perhaps annoying, do not present a danger to the inmate's health or safety and do not implicate the Eighth Amendment." *King v. Fender*, No. 1:22-cv-1372, 2022 WL 17082065, at *3 (N.D. Ohio Nov. 18, 2022).

In sum, Plaintiff fails to allege any facts regarding Defendants Newcomb and Grondin's behavior from which the Court could infer an Eighth Amendment violation. Plaintiff's Eighth Amendment claims against these Defendants will, therefore, be dismissed.

### B. State Law Claims

Plaintiff also alleges that Defendants' actions violated the Michigan Constitution, as well as their "surety bonds" under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*,

457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed Plaintiff's federal claims against Defendant Surety, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against that Defendant. Those claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have pending federal claims against Defendants Newcomb and Grondin, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendant Surety will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss any state law claims against Defendant Surety without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for

13

failure to state a claim, the following claims against remaining Defendants Newcomb and Grondin:

(1) Plaintiff's official capacity claims for damages; and (2) Plaintiff's Eighth Amendment claims.

The following claims against Defendants Newcomb and Grondin remain in the case: (1) Plaintiff's

official capacity claims seeking declaratory and injunctive relief; (2) Plaintiff's First Amendment

retaliation claims; and (3) Plaintiff's state law claims.

An Order consistent with this Opinion will be entered.


Dated:      April 17, 2023              /s/ Jane M. Beckering
                                     Jane M. Beckering
                                     United States District Judge