UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| CHARLIE FLOYD #603580, | Case No. 2:23-cv-49 |
| Plaintiff, | Hon. Jane M. Beckering<br>U.S. District Judge |
| v. | |
| SHERI NEWCOMB, et al., | |
| Defendants. _____/ | |

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 23.)

State Prisoner Charlie Floyd filed a verified complaint under 42 U.S.C. § 1983 alleging that Defendants retaliated against him in violation of his rights under the First Amendment and state laws. (ECF No. 1.) The Court issued a screening opinion on April 17, 2023. (ECF No. 8.) Floyd's retaliation claims for monetary damages against Corrections Officer (CO) Newcomb and Sergeant (Sgt.) Grondin remain. In addition, Floyd seeks declaratory and injunctive relief against Defendants.

Defendants CO Newcomb and Sgt. Grondin argue that Floyd failed to exhaust his administrative remedies on each of his claims. Sgt. Grondin argues that Floyd never exhausted his administrative remedies against her, and CO Newcomb argues

that Floyd only exhausted – in grievance **URF 22-12-2058-17a** – his December 4, 2022, claims arising out of a search of cell.

Floyd filed and exhausted one relevant grievance asserting that CO Newcomb conducted a retaliatory cell search on December 4, 2022. Floyd did not exhaust any other relevant grievances against Defendants. Floyd failed to raise retaliation during his misconduct hearing on the alleged February 14, 2023, retaliatory misconduct ticket issued by CO Newcomb for possession of a dangerous weapon. In the opinion of the undersigned Floyd failed to exhaust his claim that the February 14, 2023, misconduct ticket was issued to retaliate against him.

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss Sgt Grondin, and all claims against CO Newcomb except for the claims arising out the December 4, 2022, search of Floyd's prison cell.

If the Court adopts this recommendation, the following claims will remain against CO Newcomb arising from the December 4, 2022, shakedown of his prison cell: (1) Floyd's First Amendment retaliation claim, (2) Floyd's official capacity claim seeking declaratory and injunctive relief, and (3) Floyd's state law claims.

## II. Factual Allegations

The Court's screening opinion set forth Floyd's factual allegations:

Plaintiff alleges that on December 4, 2022, Defendant Newcomb was shaking down Plaintiff's cubicle when she threw Plaintiff's hat on the floor. (*Id.*, PageID.3.) Defendant Newcomb "proceeded to imitate a dog barking and instructed [Plaintiff] to go fetch his hat like the dog that he is." (*Id.*) Plaintiff contends that Defendant Newcomb did this in retaliation for a grievance Plaintiff had filed against her. (*Id.*)

> Plaintiff filed a grievance about the incident. (*Id.*, PageID.4.) Plaintiff also "wrote numerous complaints" to Defendant Grondin and other staff members "about being intentionally harassed, intimidated[,] threatened, [and] subjected to mental and personal abuse and retaliation." (*Id.*) According to Plaintiff, Defendants Newcomb and Grondin both told him that he needed to sign off on his grievances and stop "complaining and filing grievances or they [would] make his and the life of family members misery, hell[,] and painful." (*Id.*, PageID.4–5.) they also said they would "have something done to his family or just as easy to set [P]laintiff up and put in the hole." (*Id.*, PageID.5.)
>
> Plaintiff alleges that Defendants Grondin and Newcomb retaliated against him for filing grievances by "performing intentional harassing searches of his cell, confiscating his legal work, food, [and hygiene,] and directing other staff to act in concert with them and conduct searches of his cell and tear everything up leaving his cell in disarray." (*Id.*) On February 14, 2023, Defendants Grondin and Newcomb told Plaintiff that if he did not stop filing grievances, they would "have his cell shook down and have his ass put in the hole because they [were] tired of his s\*\*\*." (*Id.*)
>
> Plaintiff's exhibits indicate that on February 14, 2023, Defendant Newcomb issued Plaintiff a Class I misconduct for possession of dangerous contraband. (ECF No. 1-1, PageID.21.) Defendant Newcomb stated that while conducting a pat search, she found a section of an emery board in Plaintiff's shirt pocket. (*Id.*) Defendant Grondin reviewed Plaintiff on the misconduct. (*Id.*) She told Plaintiff that she could throw the ticket out because the emery board was not dangerous contraband, but that she would do so only if Plaintiff agreed "not to complain or grieve her or her staff anymore." (ECF No. 1, PageID.5.) Otherwise, Defendant Grondin stated, Plaintiff would be placed in segregation and "he [could] take his chances at his hearing." (*Id.*) Plaintiff did not agree to Defendant Grondin's terms, and she placed Plaintiff in segregation until he was found not guilty at a misconduct hearing. (*Id.*)
>
> Plaintiff contends that he "continues to be subjected to excessive cell searches, daily by [Defendants] or their agents, . . . for the purposes of harassment, intimidation[,] and retaliation." (*Id.*, PageID.7.)

(ECF No. 8, PageID.45-46.)

3

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

## IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

6

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

## V. Analysis

### a. Grievances

Floyd exhausted one relevant grievance through Step III of the MDOC grievance process. (ECF No. 24-3, PageID.115.) In that grievance, **URF 22-12-2058-17a**, Floyd grieved his December 4, 2022, retaliation claim against CO Newcomb. Floyd's Step I grievance states:

> MICHIGAN DEPARTMENT OF CORRECTIONS
> PRISONER/PAROLEE GRIEVANCE FORM
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 12-8-22   Grievance Identifier: URF|22|12|2058|17A
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Charlie Floyd | 603580 | URF | F-207 | 12/4/22 | 12/6/22 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 12/4/22
> If none, explain why.
>
> I tried to talk to c/o Newcomb and was told that she did not want to hear what I had to say.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> On 12/4/22 around 11:45am. F-Unit Officer Newcomb was shaking down 2-side cube (1-8) helping F-unit Officer Challager with the shake down. When chow was called, we asked can we change and we were ordered to wear what we had on. I asked c/o Newcomb for my coat and if she could get my hat out of my fleece pocket. When she got the hat out of the fleece pocket and threw it in the hall on the floor, Then stated, "you people are scared of the Cold, Fetch and made a dog barking sound (See F-Unit 2-side camera) on said date, I told her that I'm a human being and not a dog or any other animal, I refuse to be degraded and that this is inhuman treatment, So I refused her fetch command. So she ordered another inmate to pick it up. c/o Newcomb has harrassed me before where she wrote a ticket saying: Prisoner Floyd #603580 was on the yard ten minutes after yard was closed talking to another Inmate and that was found to be untrue. This shows a history of harrassment. This Officer Newcomb is guilty of ethnic intimidation 750.147 B. Discrimination and harrassment in violation of PD 02.03.109; MCL 37.1202.et seq 37.2101 et seq; 741.203; 42 USC 2000 et seq; Civil Service Commission Rule 1-8 She is also in violation of PD 02.03.107 (H); Civil Service Rules 1-12; 7 42 2-8 MCL 15.321 1st and 14th Amendment violations Due to c/o Newcomb Retaliatory Behavior, I fear Retaliation from this grievance.
>
> Charlie Floyd #603580
> Grievant's Signature

(ECF No. 24-3, PageID.121.) Floyd exhausted this grievance through Step III of the grievance procedure. (*Id.*, PageID.118-122.) In the opinion of the undersigned

11

grievance **URF 22-12-2058-17a** exhausted Floyd's December 4, 2022, retaliation claim against CO Newcomb only.

Floyd never submitted a grievance naming Sgt. Grondin. In the opinion of the undersigned Floyd's claims against Sgt. Grondin are unexhausted. Floyd argues that Sgt. Grondin thwarted his grievances because when he notified her of CO Newcomb's conduct, she "received adequate notice of the issue and chose not to act upon it." (ECF No. 25, PageID.133.) Notifying a supervising officer about the alleged conduct of a subordinate officer is not equivalent to filing a grievance and exhausting a grievance against that supervisor. Sgt. Grondin's alleged failure to address Floyd's concerns did not prevent Floyd from filing a grievance against Sgt. Grondin. Rather Floyd was obligated to make some effort to comply with administrative remedies before arguing that his administrative remedies were unavailable. In *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022), the Sixth Circuit reiterated the framework for an exhaustion analysis when a plaintiff makes allegations of thwarting. There, the Sixth Circuit explained:

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

12

*Id*. at 292-93.  Floyd never named Sgt. Grondin in a grievance and his actions of simply informing her about CO Newcomb's alleged conduct is not an affirmative step that complies with the MDOC's administrative procedures necessary to exhaust a claim or to show that efforts to administratively exhaust a claim were thwarted.  In the opinion of the undersigned,  Floyd's failure to exhaust his claims against Sgt. Grondin entitles her to dismissal from this action without prejudice.

### b.  False misconduct ticket

Floyd alleges that CO Newcomb issued a false Class I retaliatory misconduct ticket on February 14, 2023, for possession of dangerous contraband – a 2.5-inch-long nail file/emery board.  After the hearing, Floyd was found not guilty of the misconduct.  Floyd says that Sgt. Grondin reviewed the misconduct ticket with him before the hearing, as required under prison policy, and told him she would throw the ticket out if Floyd agreed to stop filing grievances.   The Hearing Officer determined that Floyd was not guilty.  The Hearing Report states:

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 603580 | Floyd | URF | F 207 | 02/14/2023 |

**Charge(s)**
Possession of Dangerous Contraband

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty   ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

The hearing is conducted via Video Teleconferencing. Unless otherwise noted, documents are one page. This hearing is timely held within the required 7 business days. The prisoner is present and the misconduct report is reviewed with him along with his refusal of the hearings investigator, Documentation of Effective Communitcation, Contraband Removal Form, and picture. Prisoner Floyd states that he got it from health services and forgot he had it. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanction and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

Based on the uncontested facts, Prisoner Floyd had on his person and therefore in his possession a part of an emory board barely used on 2-14-23 at 1448 hrs. MDOC PD 03.03.105 Attachment A 030 defines Possession of Dangerous Contraband in part as "a critical or dangerous tool or other item needing to be strictly controlled as specifically identified in the attachments to PD 04.04.120 "Tool Control". Per MDOC PD 04.04.120 Attachment B #6 defines a Dangerous Tool as "Emery cloth and sandpaper but not including emery boards used for nail care." This is clearly an emory board which he is authorized to have and the fact that it looks unused is not at issue because a new one will be unused. What is meant by used for nail care was just describing what types of emory boards are allowed (ie Nail file). The charge is NOT upheld.

**PROPERTY DISPOSITION (for contraband see PD 04.07.112)**
It should be destroyed.

**FINDINGS**

| Charge No. 1 | ☐ Guilty | ☒ Not Guilty | ☐ Dismissed | Reporting Code 030 |

(ECF No. 1-1, PageID.22.)

Floyd failed to exhaust his claims regarding the February 14, 2023, alleged retaliatory misconduct for possession of dangerous contraband. To exhaust his remedies, Floyd needed to assert, during his misconduct hearing, that the ticket was retaliatory. *Siggers v. Campbell*, 652 F.3d 681, 693-94. Floyd did not assert retaliation during his misconduct hearing. The Hearing Officer specifically indicated that Floyd got the emery board from health services and forgot that he had. The officers stated that Floyd "has nothing further to add." (*Id.*) The record establishes

14

that Floyd did not raise retaliation at the hearing. Nor did Floyd submit a grievance on this issue. In the opinion of the undersigned, Floyd did not exhaust his administrative remedies on his retaliatory misconduct ticket claim.

## VI. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment and dismiss the following claims without prejudice:

1. Floyd's claims against Sgt. Grondin, and

2. Floyd's claims against CO Newcomb, except for the claims arising from the December 4, 2022, shakedown of his prison cell.

If the Court adopts this recommendation, the following claims will remain against CO Newcomb arising from the December 4, 2022, shakedown of his prison cell: (1) Floyd's First Amendment retaliation claim, (2) Floyd's official capacity claim seeking declaratory and injunctive relief, and (3) Floyd's state law claims.

Dated: June 24, 2024                                /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).